UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| BANK OF AMERICA, N.A., | Case No.: 2:15-cv-01731-APG-BNW |
|---|---|
| Plaintiff | **Order (1) Granting Bank of America's Motion for Summary Judgment, (2) Denying Premier's Motion for Summary Judgment, (3) Dismissing as Moot Bank of America's Claims Against Cactus, (4) Denying as Moot Cactus's Motion for Summary Judgment, and (5) Setting Deadline for Further Action** |
| v. | |
| PREMIER ONE HOLDINGS, INC., et al., | |
| Defendants | |
| | [ECF Nos. 69, 71, 72] |

Plaintiff Bank of America, N.A. sues to determine whether a deed of trust still encumbers property located at 10609 Cave Ridge Street in Las Vegas following a non-judicial foreclosure sale conducted by a homeowners association (HOA), defendant Cactus Creek at Mountain's Edge Homeowners' Association, Inc. (Cactus). Bank of America seeks a declaration that the HOA sale did not extinguish the deed of trust and it asserts alternative damages claims against Cactus. Cactus filed a third-party complaint against its foreclosure agent, Nevada Association Services, Inc. (NAS), for indemnity, contribution, and breach of contract. NAS counterclaimed against Cactus for breach of contract and breach of the implied covenant of good faith and fair dealing.

Defendant Premier One Holdings, Inc. (Premier) purchased the property at the HOA foreclosure sale. Premier executed a short form deed of trust with assignment of rents in favor of defendant THL Family Investment LLC (THL). THL assigned the deed of trust to Acadia Investment, who later assigned it to Wei Wei Chen. Premier counterclaims to quiet title and for cancellation of the deed of trust.

1    Bank of America moves for summary judgment, arguing the sale was not properly conducted because NAS did not send notice of the sale to Mortgage Electronic Registration Systems, Inc. (MERS), the former homeowner satisfied the superpriority lien, NAS would have rejected tender so Bank of America was excused from making a tender attempt, and the sale should be equitably set aside.  Premier and THL move for summary judgment, arguing the sale was properly conducted, there is no basis to set aside the sale, and equity favors them as bona fide purchasers over Bank of America, which took no action to protect the deed of trust.  Cactus moves for summary judgment, arguing it complied with Nevada law in conducting the sale and there is no basis to set aside the sale.  Cactus also raises various arguments for why it is entitled to judgment on Bank of America's damages claims.

The parties are familiar with the facts, and I will not repeat them here except where necessary to resolve the motions.  I grant Bank of America's motion and deny Premier's motion because the former homeowner paid the superpriority amount prior to the HOA sale.  Because the HOA sale did not extinguish the deed of trust, I dismiss as moot Bank of America's damages claims against Cactus and deny as moot Cactus's motion for summary judgment.  Finally, I set a deadline for the parties to take action regarding the remaining claims and parties.

**I. ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

/ / / /

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

A homeowner's payments can cure the superpriority default. *9352 Cranesbill Tr. v. Wells Fargo Bank, N.A.*, 459 P.3d 227, 230 (Nev. 2020). In general, "[w]hen a debtor partially satisfies a judgment, that debtor has the right to make an appropriation of such payment to the particular obligations outstanding." *Id.* (quotation omitted). "The debtor must direct that appropriation at the time the payment is made." *Id.* (quotation omitted). If the debtor does not direct how to apply the payment, then the creditor may decide how to allocate it. *Id.* "If neither the debtor nor the creditor makes a specific application of the payment, then it falls to the court to determine how to apply the payment" by reference to "the basic principles of justice and equity so that a fair result can be achieved." *Id.* (quotation omitted).

The monthly assessment amount was $30. ECF No. 72-7 at 8. Cactus's ledger shows four months of delinquencies at the time the notice of delinquent assessment lien was recorded. ECF Nos. 72-5; 72-7 at 8. There is no evidence of nuisance abatement or maintenance charges. The superpriority amount thus was $120, and at most was $270.

On August 6, 2009, a $100 payment was made to Cactus through NAS. ECF No. 72-7 at 16-19. On January 11, 2010, another payment in the amount of $50 was made. *Id.* at 34. NAS sent $25 of this payment to Cactus. *Id.* at 35-37. In June 2010, another $100 payment was made. *Id.* at 38. NAS sent $50 of this payment to Cactus. *Id.* at 39-41. In January 2013, there was another $250 payment. *Id.* at 55. NAS forwarded $150 of this payment to Cactus. *Id.* at 56, 61-62. In March 2013, another $382 payment was made. *Id.* at 63. NAS sent $156.33 of this payment to Cactus. *Id.* at 64, 69-70. In total, $481.33 in homeowner payments were sent to Cactus. If this amount is applied to the superpriority amount, the superpriority lien was satisfied prior to the sale and the deed of trust was not extinguished.

There is no evidence that the debtor directed how any of these payments were to be applied. Cactus's ledger does not allocate the payments to particular months of assessments, instead applying payments to a running balance that includes assessments, late fees, and interest. *Id.* at 71-75; *see also* ECF No. 72-8 at 9 (stating that payments were applied "to the running balance"). There is no evidence of Cactus's policy about how it would apply payments.

Premier argues that none of the payments after the notice of delinquent assessment lien was applied to assessments accrued before the notice because Cactus's ledger "shows the last payment actually applied to assessments was made on 5/8/2009, months before the Notice of Delinquent Assessment Lien was recorded." ECF No. 75 at 4. Premier is incorrect. Cactus's ledger credits $481.33 toward assessments as of May 10, 2013, which is the date the sale was conducted. ECF No. 72-8 at 308-09.

Although the ledger shows Cactus applied the payments to assessments, it does not indicate which assessments were paid, other than as a credit to a running balance. I therefore must determine the equitable allocation of the $481.33 in payments.

1    The Supreme Court of Nevada provided some direction on how I am to make this
2 determination. I "should make the allocation in view of all of the circumstances, as is most in
3 accord with justice and equity and will best protect and maintain the rights of both the debtor and
4 creditor." *Cranesbill Tr.*, 459 P.3d at 231 (quotation omitted). In reaching that determination, I
5 should consider what the debtor likely desired when making the payment. *Id.* I also should
6 consider that other jurisdictions recognize a "legal preference for paying the earliest matured
7 debts." *Id.* In addressing this legal preference, I may consider whether "the unpaid HOA
8 assessments and other costs the homeowner is required to pay to the HOA, such as the costs of
9 foreclosure, to be on a running account, and therefore a single debt, or whether it considers there
10 to be multiple accounts." *Id.* And I may reference general allocation guidelines in relevant
11 treatises and Restatements, including those that relate to the debtor's obligation to third parties to
12 pay the debt. *Id.* at 231 and n.4.

13    Here, it is likely that the homeowner would prefer the payment be allocated to the
14 superpriority amount. As noted by the Supreme Court of Nevada, in HOA foreclosure cases in
15 Nevada, "it seems likely that a homeowner would prefer to cure the default on the superpriority
16 lien before satisfying any other debts owed to an HOA to avoid a superpriority lien foreclosure
17 and the consequent loss of security to satisfy the obligation secured by the first deed of trust." *Id.*
18 at 231 n.3. This is consistent with the legal preference for paying the earliest matured debts,
19 particularly for running accounts like Cactus's ledger. *See* 70 C.J.S. Payment § 55 (2019) (stating
20 that "[i]n the case of a running account . . . the court generally will apply [unallocated payments]
21 to the extinguishment of the earliest items of indebtedness"); 60 Am. Jur. 2d Payment § 72
22 (2019) (same).[1] And this is in line with the homeowners' contractual obligation under the deed
23

---

[1] Both sources cited favorably in *Cranesbill Trust*, 459 P.3d at 231.

of trust to pay assessments and other liens that can attain priority over the deed of trust. *See* ECF No. 72-1 at 6, 14; *Cranesbill Tr.*, 459 P.3d at 231 n.4 (stating that "a payment is generally allocated first to a debt that the debtor is under a duty to a third person to pay immediately" (quoting the Restatement (Second) of Contracts § 260(2)(a))).

Justice and equity therefore support applying the $481.33 in payments to the oldest assessments due. *See Diakonos Holdings, LLC v. Katie Baby, LLC*, No. 77616, 462 P.3d 694, 2020 WL 2527451, at *1 (Nev. May 15, 2020) (holding that "the district court properly looked to the purpose of the relevant statutory scheme, [Nevada Revised Statutes] Chapter 116, and how partial payments have been applied to debts in other cases, in deciding that the homeowner's payments in this case applied to the assessments making up the superpriority default"). Because the homeowner paid $481.33 and the superpriority amount was at most $270, the superpriority lien was satisfied and the deed of trust was preserved by operation of law. *See Bank of Am., N.A. v. SFR Investments Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc). Because the sale was void as to the deed of trust by operation of law, Premier's bona fide purchaser status is irrelevant. *Id.* at 121. I therefore grant Bank of America's motion for summary judgment and deny Premier's motion. Because the deed of trust was not extinguished as a matter of law, I dismiss as moot Bank of America's alternative damages claims against Cactus and I deny as moot Cactus's motion for summary judgment.

That leaves the third-party claims between Cactus and NAS. Presumably, these claims are moot given that Bank of America's damages claims against Cactus are moot. However, before I dismiss them as moot, I will direct Cactus and NAS to confer and either dismiss their claims against each other or file a proposed joint pretrial order.

/ / / /

Finally, I note some irregularities in the pleadings. Defendant Ticor Title Company was served but never answered. Bank of America has taken no action to enforce its claims against Ticor since Ticor's answer was due in 2015. I therefore direct Bank of America to show cause why its claim against Ticor should not be dismissed for failure to prosecute.

Next, the amended complaint has several irregularities. Defendant THL Family Investments LLC is listed in the caption of the amended complaint but not in the body. ECF No. 68. Meanwhile, Wei Chen is identified in the body of the amended complaint but not in the caption. *Id.* No summons was issued for Chen nor is there any proof of service. I therefore direct the parties to confer and to file a status report on who are proper defendants in this case for the entry of final judgment. If the parties do not agree on any point, the status report shall set forth their respective positions and briefly explain why their position is the correct one.

## II. CONCLUSION

I THEREFORE ORDER that plaintiff Bank of America, N.A.'s motion for summary judgment **(ECF No. 72) is GRANTED** as follows: It is hereby declared that the non-judicial foreclosure sale conducted by Cactus Creek at Mountain's Edge Homeowners Association, Inc. on May 10, 2013 did not extinguish the deed of trust and the property located at 10609 Cave Ridge Street in Las Vegas, Nevada remains subject to the deed of trust.

I FURTHER ORDER that defendants Premier One Holdings, Inc. and THL Family Investment LLC's motion for summary judgment **(ECF No. 71) is DENIED**.

I FURTHER ORDER that plaintiff Bank of America's alternative damages claims against defendant Cactus Creek at Mountain's Edge Homeowners Association, Inc. are dismissed as moot.

/ / / /

I FURTHER ORDER that defendant Cactus Creek at Mountain's Edge Homeowners Association, Inc.'s motion for summary judgment **(ECF No. 69) is DENIED as moot**.

I FURTHER ORDER that by August 7, 2020, Cactus Creek at Mountain's Edge Homeowners Association, Inc. and Nevada Association Services, Inc. shall either dismiss their claims against each other or file a proposed joint pretrial order on the third-party claims. Failure to take either of these actions by that date will result in dismissal of the third-party claims without prejudice.

I FURTHER ORDER that by July 31, 2020, plaintiff Bank of America, N.A. shall show cause why its claim against defendant Ticor Title Company should not be dismissed for failure to prosecute. Failure to respond by that date will result in dismissal of this claim without prejudice.

I FURTHER ORDER that by August 7, 2020, the parties shall file a status report regarding who are the proper defendants for entry of final judgment. If the parties do not agree on any point, the status report shall set forth their respective positions and briefly explain why their position is the correct one.

DATED this 10th day of July, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE